**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| KRISTINE ARAPOFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:05CV814–HEH |
| | ) | |
| JOHNSON & JOHNSON SERVICES, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**
**(Granting Defendants' Motion for Summary Judgment)**

This matter is before the Court on Defendants Johnson & Johnson Services, Inc., Janssen

Pharmaceutica, Inc., and Janssen, L.P.'s Motion for Summary Judgment pursuant to Rule 56 of

the Federal Rules of Civil Procedure.  The parties have filed memoranda of law in support of

their respective positions.  The Court will dispense with oral argument because the facts and

legal contentions are adequately presented in the materials before the Court, and argument would

not aid in the decisional process.  For the reasons stated below, the Court will grant Defendants'

motion.

## I.  Background

Plaintiff Kristine Arapoff brought this action against Defendants under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that Defendant Janssen, L.P.'s

("Janssen") termination of her employment constituted sex discrimination and unlawful

retaliation for bringing complaints against her supervisor.[1]  Plaintiff seeks compensatory and punitive damages, as well as costs and attorneys' fees for the litigation.  Defendants filed the present Motion for Summary Judgment arguing that Plaintiff's claims fail as a matter of law.

In June 1999, Plaintiff was hired by Janssen as a pharmaceutical sales representative.  As a sales representative, Plaintiff was responsible for visiting doctors to provide drug samples and to persuade them to prescribe Janssen's products.  Janssen evaluates its representatives based on their ability to meet goals set forth in their individual "Call Plans."  A call plan outlines the representative's target doctors and how often each doctor should be visited.  Janssen classifies visits, or "calls," made by representatives as either "professional calls," which involve directly communicating with a doctor in person, or "service calls," which involve communicating with staff other than the doctor at a doctor's office.  Janssen representatives are required to record in a computer system details about each call, including the date and time of the call, the name of the doctor seen, whether drug samples were given, and notes on the conversation with the doctor.

Because of the exposure to criminal liability arising from the distribution of prescription medications, Janssen has a sample compliance policy in place pursuant to federal Food and Drug Administration ("FDA") guidelines.  Representatives may only distribute samples to licensed practitioners.  For each sample distribution, Janssen requires the representative to complete a

---

[1]  In its Memorandum in Support of Motion for Summary Judgment, Defendants treated Count I as a claim of sexual harassment.  In its Response, Plaintiff did not dispute Defendants' arguments as to sexual harassment, but instead argued that Count I alleges sex discrimination and charged Defendants with "ignor[ing] the termination claim, and attempt[ing] to re-characterize [Plaintiff]'s complaint as one of sexual harassment."  (Pl.'s Reply 9–10.)  The Court will therefore treat Count I as a claim of sex discrimination.

Plaintiff also brought claims of intentional infliction of emotional distress and negligent retention.  Plaintiff concedes, however, that summary judgment is appropriate on those claims.  Accordingly, the Court will grant Defendants' Motion for Summary Judgment as to those claims.

Sample Request and Receipt form, which includes the practitioner's name, state license number, and signature.  The representatives must also enter information about the sample disbursements in a computer and submit the original forms to the company on a bi-weekly basis.

Janssen has a written policy against harassment that "prohibits any conduct that constitutes or could lead to or contribute to sexual harassment or harassment based on . . . gender."  Pl.'s Dep. Ex. 11.  Janssen's written policy further provides that "acts of retaliation against individuals because they, in good faith, report inappropriate conduct pursuant to policies . . . will not be tolerated."  *Id.*  Janssen also has an "Open Door" procedure in place, which sets forth a procedure for employees to communicate problems through discussion with their supervisor, supervisor's boss, or members of the Janssen human resources department.  Pl.'s Dep. Ex. 10.

Beginning in late 2002, Plaintiff was supervised by Brad Mauldin, a District Manager, who was responsible for reviewing and evaluating her performance.  Mauldin documented each evaluation of Plaintiff in a "Field Conference Report" ("FCR").  Beginning in early 2003, Plaintiff's FCR's reveal concerns with Plaintiff's performance.  In a February 2003 FCR, Mauldin wrote that one of Plaintiff's top doctors, who needed to be seen on a weekly basis, had not been seen since October 2002.  In a July 2003 FCR, Mauldin noted that Plaintiff's sales numbers had "consistently been losing market share" and "have not been acceptable YTD."  Both the February 2003 and July 2003 FCR's also included positive feedback and encouragement to Plaintiff.  In Plaintiff's 2003 Personnel Review, signed by Mauldin in January 2004, Mauldin noted that Plaintiff failed to meet the company goal of 90% call plan attainment, but also noted that he was "confident that we can work together to improve your call reach and frequency."

3

On eight occasions between November 2003 and March 2004, Plaintiff called Janssen's human resources department to make complaints about Mauldin, which were documented by a human resources representative. The following is representative of Plaintiff's complaints about Mauldin's behavior: showing insensitivity towards Plaintiff being a working mother; having frequent meetings, planning them at the last minute, and showing up for meetings late; insisting that Plaintiff taste a particular item off his plate during lunch; showing concern about Plaintiff's performance and making her feel like she does nothing right; making references to Plaintiff's family income; rejecting feedback; causing Plaintiff stress; treating Plaintiff more harshly than another representative named Tim; making Plaintiff feel singled out at a business lunch by offering her crackers and asking whether it is wise to be drinking alcohol on an empty stomach; not checking his messages one day in a timely fashion; making Plaintiff call him on a work-related matter after 9:00 p.m.; not rating Plaintiff fairly on her evaluations; working with Plaintiff more closely than anyone else in the district; and telling his Regional Business Manager that Plaintiff had territory management problems and that Plaintiff was not calling on some of her more important doctors. *See* Pl.'s Dep. Ex. 20.

In June 2004, Janssen human resources manager Doug Walton met with Mauldin to discuss Plaintiff's complaints. While Walton did not find that Mauldin created a harassing or inappropriate environment, Walton did conclude that there was a communication problem between Mauldin and Plaintiff and recommended that the parties discuss their differences in an attempt to reconcile their work relationship.

As a result of Mauldin's concerns with Plaintiff's territory management, Kelli Moran, the Regional Business Director responsible for Plaintiff's territory, reviewed Plaintiff's call records

4

and sample activity.  Moran Aff. ¶ 6.  Moran discovered that Plaintiff recorded several calls on

doctors who were on vacation on the dates of those calls and failed to submit original sample

request forms on a timely basis.  *Id.*  Moran also discovered that thirty-two original sample

request forms were recorded in the computer, but had not been submitted.  Pl.'s Dep. 173:2–9.

On September 7, 2004, Moran and a representative from human resources met with Plaintiff and

informed her that she was being terminated for falsifying company records and failing to comply

with the company's sample policy.  Moran Aff. ¶ 8.

     Plaintiff filed a Charge of Discrimination against the Defendants with the United States

Equal Employment Opportunity Commission ("EEOC") and was issued a Right to Sue Notice on

September 9, 2005.  On November 28, 2005, Plaintiff filed the present action.  Plaintiff claims

her termination was the result of gender discrimination and retaliation for her complaints about

Mauldin.  Defendants argue that Plaintiff's termination was based on performance not gender

and that Defendants reasonably and adequately responded to Plaintiff's complaints.  Further,

Defendants argue that Plaintiff bases her claim of retaliation on different facts than those put

before the EEOC, and thus failed to exhaust her administrative remedies.  Defendants also argue

that her termination was legitimately based on her falsification of Company records.

## II.  Standard of Review

     Rule 56 provides that judgment "shall be rendered . . . if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, . . . show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The facts and inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, and this party is entitled to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him." *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (alteration in original) (internal quotations omitted). The nonmoving party may not rest upon "mere allegations or denials," but instead "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### III. Analysis

#### A. Count I - Sex Discrimination

Title VII makes it "an unlawful employment practice for an employer . . . to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The Title VII complainant carries the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If a prima facie case is made, then the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's termination. *Id.* If the defendant meets his burden, the plaintiff must then prove by a preponderance of the evidence that the defendant's articulated reasons were not its true reasons, but were in fact merely a pretext for discrimination. *Id.* at 804.

A plaintiff establishes a prima facie case of discrimination by showing that "'(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse

6

employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.'" *Miles v. Dell, Inc.*, 429 F.3d 480 (4 Cir. 2005) (internal quotations omitted).  The Court finds that Plaintiff has clearly satisfied the first and second elements of the prima facie case, however, the third and fourth elements require a closer analysis.

Regarding the third element, Plaintiff does not dispute that she had failed to achieve the company goal of 90% call plan attainment, that her territory was losing market share, and that more than one of her target doctors were not being seen on a regular basis.  *See* Pl.'s Dep. Exs. 14, 18.  Plaintiff admits that she was supposed to file medication sample forms with the company each week and does not dispute that she was often more than six months late in submitting six such forms.  *See* Pl.'s Dep. 120:18–25.  Plaintiff also admits that, on at least three occasions, she recorded visits as "professional" calls even though she did not meet with a doctor, which is explicitly set forth in Janssen's General Standards of Conduct as a "major violation" for which termination is an appropriate disciplinary action.  *See* Pl.'s Dep. 99:6–13, 183:25 to 184:6, Ex. 9. By these admissions, Plaintiff has failed to demonstrate that she was performing her job duties at a level that met Janssen's legitimate expectations.  *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 298 (4th Cir. 2004) (finding that plaintiff "by her own admissions of the work performance and rules infractions . . . has failed to demonstrate that she was performing her job duties at a level that met [her employer]'s legitimate expectations at the time of the adverse employment action").

Regarding the fourth element, Plaintiff provides no evidence as to whether the position remained open or was filled by an applicant outside of the protected class.  Plaintiff instead argues that she has "proffered sufficient evidence of sex discrimination to meet her burden of

establishing a prima facie case."  Pl.'s Resp. 10.  While there are limited situations in which a

plaintiff does not have to satisfy the fourth element of a prima facie case, *see Miles v. Dell, Inc.*,

429 F.3d 480, 486 (4th Cir. 2005), Plaintiff makes no effort to explain why this is such a case,

except to state that the "record is replete with evidence of sex discrimination."  Pl.'s Resp. 10.

Even if the Court were to find that Plaintiff makes a prima facie case, Defendants have

articulated a legitimate, nondiscriminatory reason for the termination—Plaintiff's falsification of

her call records and failure to comply with Janssen's sample policy.  *See* Moran Aff. ¶¶ 6, 8.

Plaintiff concedes the alleged misconduct.  The burden therefore shifts back to Plaintiff to

demonstrate that the gender neutral justification articulated by Defendants was pretextual.

Kelli Moran, Regional Business Director, in consultation with Doug Walton, Human

Resources Manager, made the decision to terminate Plaintiff.  Moran Aff. ¶ 8.  Plaintiff provides

no evidence that Moran's decision was motivated by discriminatory animus.  To the contrary,

Plaintiff concedes that Moran, as a working mother herself, would not have a reason to

discriminate against her based on her gender.  *See* Pl.'s Dep. 161:6–12.

Plaintiff does not allege that Mauldin was the actual decisionmaker or was principally

responsible for the decision, but instead, alleges that Mauldin "participated in" the decision to

terminate Plaintiff.  *See* Pl.'s Resp. 4.  Merely participating in, or even having "substantial

influence" over, the termination decision is not sufficient to make Mauldin the decisionmaker for

purposes of this discrimination action.  *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354

F.3d 277, 286–91 (4th Cir. 2004).

Even if the Court determined that Mauldin was a decisionmaker for purposes of this

action, Plaintiff is still unable to show the reasons for termination were pretextual.  Plaintiff does

not dispute the reason advanced by Defendant for her termination—submitting inaccurate call records and failing to comply with the sample policy.  Further, when viewing the evidence in the light most favorable to Plaintiff, the circumstances attending Plaintiff's termination do not rise to the level of sex discrimination.

In her Response, Plaintiff cites only one instance of alleged discrimination by Mauldin to support her contention of pretext[2]—Mauldin making statements to her "to the effect that women belonged at home, rather than working."  *See* Pl.'s Resp. 11.  Standing alone this allegation is insufficient to show pretext where there is substantial evidence of legitimate, nondiscriminatory reasons for termination.  Plaintiff also alleges that Mauldin was trying to "set up" Plaintiff and "got" Plaintiff terminated.  Even if some sort of "set up" was involved here, Plaintiff does not show how Mauldin's "set up" was unlawfully discriminatory based on her gender.  Plaintiff does not dispute that other employees, males included, have been terminated by Janssen for the same reason given to Plaintiff—falsifying call records.  *See* Moran Aff. ¶ 9; Watson Aff. ¶¶ 3–4.

The complaints made by Plaintiff to Janssen's human resources department show that Plaintiff's concerns primarily relate to Mauldin's management and interpersonal style.  *See* Pl.'s Dep. Ex. 20.  Plaintiff's primary witness, Ann Williams, a former District Manager of Janssen, alleges specific acts of sex discrimination by Mauldin against other women.  *See* Williams Aff. ¶¶ 4–5.  As to Plaintiff, Williams merely gives her opinion that Plaintiff's complaints were

---

[2] Plaintiff's Response points to six instances in support of her claims of pretext.  *See* Pl.'s Resp. 10–11.  Three of these instances involve allegations of sex discrimination by Mauldin against other women, and another involves Moran allegedly stating that Mauldin is a "liar."  *Id.* The Court expresses no opinion as to whether Mauldin's actions against others rise to the level of sex discrimination, but instead, the Court is concerned with whether a reasonable juror could find that Mauldin's actions constitute sex discrimination against Plaintiff.

credible and that Mauldin's actions described in the complaints constitute sex discrimination. *See* Williams Aff. ¶ 10.  Williams, however, alleges no specific acts of sex discrimination directed by Mauldin against Plaintiff.

The Court finds that the facts in this case, even when viewed in the light most favorable to Plaintiff, cannot reasonably support the conclusion that Plaintiff's discharge was motivated by sex discrimination.

## B. Count II - Retaliation

Looking next at Plaintiff's retaliation claims, Defendants first argue that Plaintiff has failed to exhaust her administrative remedies.  In Plaintiff's Charge of Discrimination filed with the EEOC, Plaintiff based her claim of retaliation on being a possible witness in a Title VII case against Janssen, in which her testimony would have been unfavorable to the company.  Pl.'s Dep. Ex. 19.  In this action, Plaintiff bases her claim of retaliation on making complaints to her company about her supervisor. Compl. ¶ 22.  "If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000).  The Court finds that it is unnecessary to determine whether Plaintiff's claim in this case is reasonably related to her EEOC charge because Plaintiff fails to show her termination was the result of unlawful retaliation.

The *McDonnell Douglas* framework applicable to claims of sex discrimination applies to retaliation claims as well.  *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 n.1 (4th Cir. 2000). Even if the Court assumes that Plaintiff has made a prima facie case of retaliation, she has failed to prove that Defendants' legitimate, nondiscriminatory reasons for her termination were mere

pretext, as explained above.  Plaintiff states that the basis for believing that her termination was

in retaliation for coming forward with complaints against Mauldin is "the timing that it

occurred."  Pl.'s Dep. 190:17–23.  Even assuming that her complaints are protected activity

under Title VII, temporal proximity alone is not sufficient to show pretext where there is

substantial evidence of a legitimate, nondiscriminatory reason for the termination, particularly

where ten months passed between the time Plaintiff began making complaints, in November

2003, and the time Plaintiff was terminated, in September 2004.  *See Carter v. Ball*, 33 F.3d 450,

460 (4th Cir. 1994).

The Court finds that the undisputed facts in this case cannot reasonably support the claim

that Plaintiff's discharge constituted an unlawful retaliation.

### IV.  Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment is granted.

An appropriate Order will accompany this Memorandum Opinion.

                                                    /s/
                                        Henry E. Hudson
                                        United States District Judge


ENTERED this    27th    day of     September 2006    .
Richmond, VA